UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
STEVEN DWORIN,

        Plaintiff,      06 Civ. 13265 (PKC)

 -against-

                MEMORANDUM
                 AND ORDER

DONALD DEUTSCH and DEUTSCH, INC.,

        Defendants.
------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

   Plaintiff Steven Dworin is a former President of defendant Deutsch Inc., an advertising agency (the "Agency"). In February 1994, plaintiff entered into an agreement with the Agency governing the terms and conditions of his separation of employment and containing a provision that prohibits the Agency and certain of its employees from disparaging him (the "Separation Agreement"). Plaintiff alleges that defendants, the Agency and Donald "Donny" Deutsch ("Deutsch"), Chairman of the Agency, defamed him and breached the Separation Agreement, and that Deutsch tortiously interfered with plaintiff's contractual relations. Specifically, plaintiff asserts that he was defamed (and the Separation Agreement breached) by statements contained in the book <u>Often Wrong, Never in Doubt, Unleash the Business Rebel Within</u>, which was written by Deutsch in collaboration with employees of the Agency, and by defendants' comments in an article published in the New York Post.

   Dworin filed his original complaint in this action on April 3, 2006 in the United States District Court for the District of New Jersey. The case was transferred to this Court on November 16, 2006. Subject matter jurisdiction exists by reason of diversity of

citizenship and an amount in controversy in excess of the jurisdictional threshold. 28 U.S.C. § 1332. The amended complaint (the "Amended Complaint" or "A.C."), which was filed on February 1, 2007, asserts five state common law claims: first, libel and libel per se; second, slander and slander per se; third, breach of contract; fourth, rescission of contract; and fifth, which is asserted only against Deutsch, tortious interference with contractual relations.

The defendants have moved to dismiss the defamation claims for failure to state a claim upon which relief can be granted. Rule 12(b)(6), Fed. R. Civ. P. Deutsch also has moved to dismiss the breach of contract and rescission claims. Accepting all allegations of the Amended Complaint as true and drawing all reasonable inferences in favor of the non-movant, I conclude that plaintiff has failed to state a claim for defamation against the defendants. None of the assertedly defamatory statements meet the standards under New York law for a claim in defamation. New York law provides protection—absolute immunity—to statements, which, viewed in their context, are statements of opinion. Those statements that, viewed in a light most favorable to plaintiff, could be viewed as false statements of fact or "mixed opinion" nevertheless do not support a defamation claim under relevant principles of New York law. I further conclude that, because Deutsch is not a party to the Separation Agreement, the third and fourth claims for breach of contract and rescission do not state claims against him.

Background

The following facts are drawn from plaintiff's Amended Complaint, and, as noted, are taken to be true for purposes of these motions.

On or about February 16, 1994, plaintiff resigned from his position as President of Deutsch/Dworin Inc., which is now Deutsch Inc., where he was also an equity

2

owner.  (A.C. ¶¶ 9-10.)  Plaintiff entered into a written Separation Agreement, which was executed by plaintiff and Deutsch/Dworin Inc., by Deutsch, in his capacity as Executive Vice-President.  (Id. ¶ 10, Ex. D.)  The Separation Agreement provides, among other things, that "[n]either the company nor its officers or directors shall make any public or private statements about Steve Dworin which are derogatory."  (Id. ¶ 11.)  Plaintiff asserts that the foregoing provision was considered by the parties to be material and is enforceable in perpetuity.  (Id. ¶ 12, 15-16.)

Approximately one decade later, Deutsch, in collaboration with managing partners, senior executives and staff of the Agency, wrote a book about the advertising business entitled Often Wrong, Never in Doubt, Unleash the Business Rebel Within (the "Book"), which was released to the public on or about October 1, 2005.  (Id. ¶ 15, 17.)  The Book contains a chapter titled The Failure-Dichotomy Principle, in which Deutsch made false statements about plaintiff.  (Id. ¶ 7.)  The statements in the Book which plaintiff alleges are derogatory and defamatory are set forth in haec verba in paragraph 20 of the Amended Complaint.  Plaintiff alleges that the statements "describe events that never occurred or else distort, with falsehoods, certain events that did occur."  (Id. ¶ 20.)  He claims that the statements, taken in context, portray him as a "'mercurial' self-involved businessman, with an agenda not in accord with the best interests of his company, who was primarily an administrator who alienated employees."  (Id. ¶ 21.)  He also alleges that the statements portray him "as having been forced to 'resign' pursuant to Deutsch's desire to 'can him' in an indirect manner" (id. ¶ 22), when the truth is that he left the agency because of other reasons, including Deutsch's "unethical and dishonest behavior" (id. ¶ 23).

3

Motion to Dismiss Standard

Rule 8(a)(2), Fed. R. Civ. P., requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1964 (2007) (internal quotations and citation omitted). When a defendant tests the sufficiency of a complaint by a motion under Rule 12(b)(6), "[t]o survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 127 S. Ct. at 1965). The complaint is measured against a "flexible plausibility standard," which obligates the "pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007). This "does not require heightened fact pleading of specifics," In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007); see Erickson v. Pardus, __ U.S. __, 127 S. Ct. 2197, 2200 (2007); however, it does "require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'" Elevator Antitrust Litig., 502 F.3d at 50 (quoting Twombly, 127 S. Ct. at 1974) (alteration in Elevator Antitrust Litig.).

On a motion to dismiss, a court must accept the allegations of the complaint as true and draw all reasonable inferences in the non-movant's favor. See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 71 (2d Cir. 1995) (per curiam). Rule 12(b)(6) motions are limited to the facts alleged in the complaint and must be converted into a motion for summary judgment if the court considers materials outside

4

the pleadings. Rule 12(b)(6). However, the court may, without converting the motion into a motion for summary judgment, consider documents relied on or incorporated by reference in the complaint. Int'l Audiotext Network, Inc., 62 F.3d at 72. "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (internal quotations and citation omitted); see also Levy v. Southbrook Int'l Invs., Ltd., 263 F.3d 10, 13 n. 3 (2d. Cir. 2001). In considering the motion to dismiss under Rule 12(b)(6), I have considered the Book, the New York Post article, and the Separation Agreement because plaintiff has relied upon them to such an extent that they are integral to the Amended Complaint.

Discussion

I. <u>Defendants' motions are granted as to plaintiff's defamation claims.</u>

Defendants argue that the statements set forth in the Amended Complaint are not defamatory because they are protected by the absolute privilege afforded to statements of opinion, and that plaintiff's slander and libel claims must therefore be dismissed. In the alternative, the defendants contend that any facts contained in the book, even if false, are not defamatory.

Ordinarily, in order to state a claim for defamation, the plaintiff must plead special harm or special damages, meaning "'the loss of something having economic or pecuniary value.'" Liberman v. Gelstein, 80 N.Y.2d 429, 434-35 (1992) (quoting Restatement §575, comment b). However, the plaintiff need not allege special damages if the statement is defamatory per se, because legal injury is presumed or implied from

5

the bare fact of the publication itself. Id. at 435. Here, plaintiff has not pled special damages, but he has alleged injury to his professional reputation, which, if the allegation is otherwise sufficient, may state a claim for defamation per se. See Clemente v. Impastato, 274 A.D.2d 771, 773 (3d Dep't 2000).

To state a defamation claim, New York law requires that a plaintiff plead (1) a false statement of fact, (2) regarding the plaintiff, (3) made to a third party by the defendant, and (4) injury to the plaintiff. Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 409 (2d Cir. 2000). On a motion to dismiss, the court must decide whether the statements alleged to have caused plaintiff an injury are "reasonably susceptible" to the defamatory meaning imputed to them. See Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986). A statement is "reasonably susceptible" of a defamatory meaning when it "'tend[s] to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number in the community.'" Levin v. McPhee, 119 F.3d 189, 195 (2d Cir. 1997) (quoting Tracy v. Newsday, Inc., 5 N.Y.2d 134, 136 (1959)).

Unlike the United States Constitution, the New York Constitution provides absolute immunity from defamation claims for statements of pure opinion. Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163, 178 (2d Cir. 2000); see also, Steinhilber v. Alphonse, 68 N.Y.2d 283, 289 (1986). If, however, the facts upon which an opinion is based are set forth for the reader, and the plaintiff alleges that both the opinion and the facts upon which it is based are false, the opinion and facts may form the basis of a defamation claim. Jewell v. NYP Holdings, Inc., 23 F. Supp. 2d 348, 377 (S.D.N.Y. 1998) (citing Silsdorf v. Levine, 59 N.Y.2d 8, 10 & 14-15 (1983)); see also,

6

Coliniatis v. Dimas, 848 F. Supp. 462, 469 (S.D.N.Y. 1994). In addition, a statement of opinion which implies that it is based on facts that support the opinion, which are unknown to persons reading or hearing it, is an actionable "mixed opinion." Steinhilber, 68 N.Y.2d at 289. "The question is one of law for the court and one which must be answered on the basis of what the average person hearing or reading the communication would take it to mean." Id. at 290.

The New York Court of Appeals has noted that "[d]istinguishing between assertions of fact and nonactionable expressions of opinion has often proved a difficult task." Brian v. Richardson, 87 N.Y.2d 46, 51 (1995). In deciding whether a statement is protected opinion or one implying actionable facts, a court should evaluate four factors:

> (1) an assessment of whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous; (2) a determination of whether the statement is capable of being objectively characterized as true or false; (3) an examination of the full context of the communication in which the statement appears; and (4) a consideration of the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might "signal to readers or listeners that what is being read or heard is likely to be opinion, not fact."

Steinhilber, 68 N.Y.2d at 292 (quoting Ollman v. Evans, 750 F.2d 970, 983 (1986)). "[I]n distinguishing between actionable factual assertions and nonactionable opinion, the courts must consider the content of the communication as a whole, as well as its tone and apparent purpose." Brian, 87 N.Y.2d at 51. In evaluating defendants' statements, I have been mindful of the New York Court of Appeals' "commitment to avoiding the 'hypertechnical parsing' of written and spoken words for the purpose of identifying 'possible facts' that might form the basis of a sustainable libel action." Gross v. New York Times Co., 82 N.Y.2d 146, 156 (1993) (citing Immuno AG. v. Moor-Jankowski, 77 N.Y.2d 235, 256 (1991)).

1. <u>Statements in the Book</u>

I conclude that none of the statements in the Book about which plaintiff complains are defamatory. In light of the factors set forth in <u>Steinhilber</u>, an examination of the full context of the Book shows that many of the allegedly defamatory statements are "pure opinion," and are therefore not actionable under New York law. Although some of the statements about plaintiff in the Book, viewed in isolation, could be found to convey factual assertions, the statements must be read in context. In light of the autobiographical nature of the book, the rather inflammatory rhetoric and hyperbole contained therein, and, by plaintiff's own account, Deutsch's purpose of portraying plaintiff as "an antagonist to his own protagonist" for literary reasons (<u>see</u> Pl. Opp. Br. 3), it would be plain to the reasonable reader of the Book that Deutsch was conveying nothing other than his own biased opinion about plaintiff, a man with whom he was engaged in a bitter power struggle which he describes in detail. <u>See</u> <u>Immuno AG.</u>, 77 N.Y.2d at 252-53 (letters to the editor are generally understood to be given only the weight its readers choose to accord the author's views); <u>cf.</u> <u>Gross</u>, 82 N.Y.2d at 155-56 (accusation that plaintiff was "corrupt" could form the basis of a defamation claim because it appeared in a "lengthy, copiously documented newspaper series" written after "thorough investigation," as opposed to "more opinionated journalistic endeavors," such as the Op Ed or editorial sections). Any other reading of these statements would require the kind of "strained or artificial construction" the New York Court of Appeals has warned against. <u>Dillon v. City of New York</u>, 261 A.D.2d 34, 38 (1st Dep't 1999) (citing <u>Silsdorf</u>, 59 N.Y.2d at 14-15); <u>see also</u>, <u>Cohn v. National Broadcasting Co.</u>, 50 N.Y.2d 885, 887 (1980) ("[c]ourts will not strain to find a defamatory interpretation where none

exists"). Furthermore, many of the challenged statements lack precise meaning, or are incapable of being proven true or false.

Turning to the specific statements at issue, on page 53 of the Book (A.C. ¶ 20A), Deutsch, referring to plaintiff's reaction to the Agency's successful pitch to the restaurant chain, Hardee's, states:

> When we got the job, it seemed to me the guy [i.e., Dworin] was actually bummed out. This was a big win for us at the time, but he didn't seem happy for us; if he wasn't there, if he wasn't part of the process, it wasn't a win for him.

Although it could be argued that this statement is based on facts not available to the reader, Deutsch gives numerous indicators—e.g., "it seemed to me . . . ," "he didn't seem . . . "—which "signal to readers . . . that what is being read . . . is likely to be opinion, not fact." Steinhilber, 68 N.Y.2d at 292 (quoting Ollman, 750 F.2d at 983); see also, Kirch v. Liberty Media Corp., 04 Civ. 667 (NRB), 2004 WL 2181383, at *6 (S.D.N.Y. Sept. 27, 2004) (interview contained indicators such as "I believe . . ." and "I'd say . . . ," which signaled opinion), aff'd in part, rev'd in part on other grounds, 449 F.3d 388 (2d Cir. 2006). Furthermore, Deutsch's perception of plaintiff's reaction to the Hardee's account cannot be "objectively characterized as true or false," and, under New York law, is non-actionable pure opinion. See Steinhilber, 68 N.Y.2d at 292. The rest of the statements identified in paragraph 20A of the Amended Complaint—that the Agency successfully pitched Hardee's business, and that plaintiff was not present for the pitch because his mother was sick—are factual, but are obviously not defamatory.

Similarly, as set forth in paragraph 20B, Deutsch wrote: "I should have said 'look, motherf***er, this is it: number one, you're out of line; number two you are always going to be number two here. It is what it is, and it is a huge opportunity for

9

you.'" Deutsch's reference to plaintiff as a "motherf***er" is "a type of epithet not to be taken literally and not deemed injurious to reputation." DePuy v. St. John Fisher College, 129 A.D.2d 972, 973 (4th Dep't 1987). Furthermore, Deutsch's statements regarding what he should have said to plaintiff are expressions of his pure opinion; they are not "capable of being objectively characterized as true or false." Steinhilber, 68 N.Y.2d at 292. It cannot be proven that he is dishonest in his belief that he "should have said" these things. Nor can it be objectively proven, for example, that plaintiff was not "out of line," or that he was not "always going to be number two." Viewed in context, there is no suggestion that Deutsch's statements are based on anything other than his own opinion.

As set forth in paragraph 20D, Deutsch expressed his view that "even the people [plaintiff] brought in" were unhappy with their jobs. These words are immune from plaintiff's defamation claim because they are expressions of Deutsch's pure opinion. He used phrases like "halfway out the door" and "morale problems," which do not have a "precise meaning" but are "indefinite and ambiguous," and are not "capable of being objectively characterized as true or false." Steinhilber, 68 N.Y.2d at 292.

Deutsch's accusation that plaintiff was "the ego-driven maniac in this particular fight" (A.C. ¶ 20M), viewed in context, is also an expression of Deutsch's opinion, though the statement is actionable "mixed opinion," because it can fairly be read as a conclusion based on certain stated facts which plaintiff alleges are untrue. See Jewell, 23 F. Supp. 2d at 377 ("[W]here the plaintiff alleges that both the opinions and the facts are false, a motion to dismiss should not be granted, and the plaintiff may proceed against both the statements of fact and opinion" (citing Silsdorf, 59 N.Y.2d at 10 & 14-15)). The statement must be viewed in context in order to determine whether, as a

10

matter of law, the statement is "reasonably susceptible" of a defamatory meaning.[1] Kelly, 806 F.2d at 46. I conclude that it is not. It is the context of the statement that is dispositive here. "The construction which it behooves a court of justice to put on a publication which is alleged to be libelous is to be derived as well from the expressions used as from the whole scope and apparent object of the writer." James v. Gannett Co., Inc., 40 N.Y.2d 415, 419-20 (1976) (quoting Cooper v. Greeley, 1 Denio 347, 350 (N.Y. Sup. 1845)). Deutsch is presenting the reader with a one-sided, highly dramatic depiction of a fight for control between two high-powered advertising executives. He is not literally accusing plaintiff of suffering from "mania," but rather, he is slinging another hyperbolic epithet. See DePuy, 129 A.D.2d at 973. Viewed in context, the reference to plaintiff as an "ego-driven maniac" is not the type of statement that could injure the reputation of an advertising agency president and, therefore, is not actionable. Similarly, plaintiff's reference to plaintiff as "mercurial" (A.C. ¶ 21), is not defamatory, especially considering that it is immediately preceded and superseded with references to plaintiff as "very bright," "hard-charging," "talented," and "successful." (Book at 52.)

Turning to those statements which arguably do not constitute opinion, I conclude that they, too, are non-actionable because they are "not reasonably susceptible of a defamatory meaning." Dillon, 261 A.D.2d at 38. As asserted in paragraph 20C of the Amended Complaint, Deutsch stated, "Steve had brought in a lot of his own people, which is what executives do when they gain authority in organizations, pack them with acolytes." There is nothing defamatory about this statement. Deutsch acknowledges that

---

[1] Although courts often merge the two inquiries, "the proper course is first to determine whether a statement is capable of conveying a defamatory meaning and then to determine whether it is libel per se or per quod." Jewell, 23 F. Supp. 2d at 361 n.13 (citing Horne v. Matthews, No. 97 Civ. 3605 (JSM), 1997 WL 598452, at *2 n.4 (S.D.N.Y. Sept. 25, 1997)).

it is common for executives to hire people they have worked with before. The fact that he refers to such people as "acolytes" does not turn this rather benign comment into something that would tend to injure a man's reputation.

Likewise, Deutsch's statements that plaintiff was upset about not being included in proposed magazine articles profiling Deutsch and about not having his "name[] on the door" (A.C. ¶¶ 20N-20P), while perhaps portraying plaintiff as publicity-hungry, are not defamatory. Viewed in context, the statements are not of the type that "tend[ ] to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." Levin, 119 F.3d at 195.

Several of the statements in the book reflect negatively on plaintiff's management style. (A.C. ¶¶ 20Q-U.) Deutsch describes a conversation in which plaintiff played the "bad cop" and said that he felt obligated to chime in as the "good cop." (Id. ¶¶ 20T-U.) He stated that, in contrast to his own preference for "open discussions," plaintiff liked to "take executives aside and whisper in their ears." (Id. ¶ 20Q.) Fairly read, Deutsch is expressing disapproval with plaintiff's approach to managing his employees. However, these statements are not the type that would tend to ruin a man's reputation. See Levin, 119 F.3d at 195. Furthermore, the New York Court of Appeals, in Aronson v. Wiersma, 65 N.Y.2d 592, 594 (1985), stated, "the mere expression of unhappiness with plaintiff's fulfilling [ ] [job] duties [ ] is not libelous per se."

The statements identified in paragraphs 20E through 20L all relate to the circumstances of plaintiff's departure from the Agency and Deutsch's internal thought processes. Deutsch describes conversations which took place between himself and

plaintiff immediately preceding plaintiff's resignation and after plaintiff left the company. Even accepting plaintiff's interpretation of Deutsch's statements, which is that they imply that he was "forced to 'resign,' pursuant to [Deutsch's] desire to 'can him' in an indirect manner," the statements are not the type that would induce hatred or contempt in the minds of a substantial number in the community. Deutsch makes it clear in the Book that his desire to fire plaintiff was due to his subjective view—his opinion—that plaintiff was gaining too much control over the Agency, and not because plaintiff lacked the ability or talent to succeed as president of an advertising agency.

This is not, for example, a circumstance in which Deutsch asserts that he or anyone else summoned plaintiff to a meeting at which plaintiff was asked to submit his resignation or suffer an involuntary termination.[2] Rather, viewed in a light most favorable to plaintiff, Deutsch has, in substance, stated that his desire to rid the Agency of plaintiff was manifested in his attitude toward plaintiff and this led or "forced" plaintiff to resign. In such a context, whether the resignation was "forced" by Deutsch or was a voluntary decision by plaintiff is a matter of opinion rather than a matter of fact. In this specific context, the circumstances which led this plaintiff to announce his intent to resign cannot be objectively verified because they turn on subjective influences on plaintiff's thought processes.

Finally, the statements challenged in paragraph 20V of the Amended Complaint relate to two jobs plaintiff held subsequent to resigning from the Agency. Referring to the second job plaintiff held after leaving the Agency, Deutsch said, it "[t]ook a couple of years and he was gone from there too . . . ." At worst, this statement

---

[2] Even at that, a statement that a person was involuntarily terminated without also implying misconduct on the part of the employee is not generally actionable in defamation. See Lian v. Sedgwick James of New York, Inc., 992 F. Supp. 644, 649 (S.D.N.Y. 1998) (citation omitted).

13

suggests that plaintiff was terminated from the job. However, "statement[s] of discharge or termination from employment, even if untrue, do[ ] not constitute libel. 'It is only when the publication contains an insinuation that the dismissal was for some misconduct that it becomes defamatory.'" Lian, 992 F.Supp. at 649 (quoting Nichols v. Item Publishers, 309 N.Y. 596, 601 (1956)) (internal citations omitted). The statement cannot reasonably be interpreted as accusing plaintiff of misconduct that led to termination.

Plaintiff's claims for libel and libel per se, insofar as they are based on statements contained in the Book, are dismissed.

### 2. Statements to the New York Post

Plaintiff alleges that on or about February 15, 2006, the Agency and Deutsch caused a story to be published in the New York Post which falsely refers to plaintiff as a "'disgruntled' ex-employee who was forced out of the agency." (A.C. Count One ¶ 3.) Plaintiff alleges that these statements constitute libel, libel per se and slander and slander per se. I have reviewed the article and I conclude that, read in context, the statements contained therein can not form the basis for a defamation claim. The article merely refers to plaintiff as a "disgruntled former employee." It is undeniable that plaintiff is an "ex-employee" of the Agency. "Disgruntled" in the context of the article implies that he is disaffected, displeased or, perhaps, angry with his former employer. These are statements about the subjective state of mind of plaintiff not susceptible of objective verification. That plaintiff is or is not "disgruntled" is a matter of opinion based on the fact that he was "threatening to sue," which was set forth in the article. Plaintiff's claims for libel and libel per se and slander and slander per se, insofar as they are based on the New York Post article, are dismissed.

14

II.     Deutsch's motion is granted as to plaintiff's contract claims.

Deutsch can not be held personally liable for breaching the non-disparagement provision of the Separation Agreement because he was not a party to the contract. Deutsch did not sign the contract in his personal capacity but, rather, the face of the document makes plain that it was executed in his capacity as "Executive Vice-President of Dworin/Deutsch Inc." In New York, "[w]here a principal of a corporation expressly signs a contract in his or her capacity as an officer of the corporation, unless he or she purports to personally bind him or herself, he or she will not be held personally liable under the contract." Maranga v. McDonald & T. Corp., 8 A.D.3d 351, 352 (2d Dep't 2004). A corporate officer is only personally bound when there is, "clear and explicit evidence of the [officer]'s intention to substitute or superadd his personal liability for, or to, that of [the corporation]." Mencher v. Weiss, 306 N.Y. 1, 4 (1953).

No facts are alleged that would support a conclusion that Deutsch intended to sign the Separation Agreement in his individual capacity. The provision that states that "[n]either the Company nor its officers or directors shall make any public or private statements about Dworin which are derogatory or inconsistent with the Press Release" only serves to make the company liable for certain acts of certain of its employees, but does not bind the employees to the contract. See Salzman Sign Co. v. Beck, 10 N.Y.2d 63, 63-67 (1961) (a corporate officer who signed a contract once, as president of the corporation, was not personally liable even though the contract specified that, "the officer or officers signing on behalf of such corporation, hereby personally guarantee the payments hereinabove provided for"). Plaintiff's breach of contract claim against defendant Deutsch, the third claim, is therefore dismissed. Because I find that defendant

15

Deutsch was not a party to the contract, the rescission of the Separation Agreement against Deutsch, the fourth claim, is also dismissed.

CONCLUSION

For the reasons outlined above, defendant Donald Deutsch's motion to dismiss is granted as to all claims in the complaint, except the claim for tortious interference with contract (fifth claim). Defendant Deutsch Inc.'s motion to dismiss is granted as to the libel and libel per se (first claim), and slander and slander per se (second claim). The claims against Deutsch Inc. for breach of contract (third claim) and recission (fourth claim) remain pending.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
February 21, 2008